IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MESSAGE SYSTEMS, INC. :
:
    v. : CIVIL NO. CCB-09-2122
:
INTEGRATED BROADBAND :
SERVICES, LLC. :

...o0o...

**MEMORANDUM**

Now pending before the court is a motion to dismiss for lack of personal jurisdiction filed by the defendant Integrated Broadband Services, LLC ("IBBS"), against the plaintiff Message Systems, Inc. ("Message Systems"). Message Systems has filed suit against IBBS for breach of contract, copyright infringement, and declaratory judgment. The issues in this motion have been fully briefed and no hearing is necessary. For the following reasons, the defendant's motion will be denied.

**BACKGROUND**

Message Systems is a Delaware corporation, with its principal place of business in Columbia, Maryland. Message Systems develops, markets, and licenses software. IBBS is a limited liability company organized under the laws of the State of Georgia, and has its principal place of business in Kennesaw, Georgia. IBBS provides software and services to broadband network operators. The dispute in this case arises from a license agreement (the "Agreement") between the parties for IBBS's use of Message Systems' electronic mail transfer software, currently trademarked under the name "Momentum"[1] (the "Software").

On December 26, 2006, IBBS co-founder Michael Ingram contacted Message Systems

---

[1] At the time the parties entered into the Agreement, Momentum was called "Message Systems MTA Version 2.1". (*See* Schlossnagle Aff. ¶ 11.)

1

by email to inquire about Message Systems' products. (Schlossnagle Aff. at ¶ 18.) He did so by clicking on a link on the Message Systems website that read: "Click below if you . . . Want a sales representative to contact you", which routed emails to the following address: sales@messagesystems.com.[2] (*Id.* at Ex. K & Ex. O.) The same webpage includes information about Message Systems' corporate headquarters, indicating that they are located in Columbia, Maryland. (*Id.* at Ex. K.) The next contact between the parties was also in December 2006, when IBBS contacted Joe Svezia, a sales representative at Message Systems, by telephone. (Fielder Decl. ¶ 6.) IBBS believes Mr. Svezia was based in California. (*Id.*) On or about January 2, 2007, Mr. Svezia then called IBBS and gave a presentation of Message Systems' services over the telephone (*id.* at ¶ 7), and on January 9, 2007, Mr. Svezia and a technical employee gave a presentation to IBBS at the IBBS offices in Kennesaw, Georgia. (*Id.* at ¶ 8.) No meeting between the parties ever occurred in Maryland.

On February 14, 2007, the parties executed the Agreement, whereby Message Systems granted IBBS a non-exclusive, limited license to the Software. In exchange for the license, IBBS agreed to pay a fee in accordance with the fee schedule attached to the Agreement. IBBS apparently faxed the executed Agreement to a 702 area code, which is in Colorado. (*Id.* at ¶ 12.) According to Message Systems, however, during the early stages of the parties' relationship, it gave IBBS two Maryland phone numbers to call for service, one beginning with the 410 area code, and the other the 443 area code, and IBBS used both of these phone numbers. (Schlossnagle Aff. ¶ 20.) Each page of the Agreement also stated clearly that Message Systems' address is in Columbia, Maryland. (*See* Pl.'s Opp'n Ex. 2.) Further, the Agreement included a

---

[2]  Mr. Ingram's email to Message Systems, dated Tuesday, December 26, 2006, 11:36 AM, read in full: "Hello, My company is looking for and [sic] edge MTA product to protect our internal MTA's. We currently process 7 million messages per day. Please contact me with information concerning your solution. Regards, Michael Ingram." (Schlossnagle Aff. Ex. O.)

2

choice of law clause, providing that "[t]his Agreement, this interpretation hereof, and any disputes arising hereunder, shall be governed by the laws of the State of Maryland, without regard to its choice of law rules." (*Id*. at § 10.) The Agreement did not contain a choice of forum clause, however. IBBS does not dispute that all payments made under the Agreement were sent by IBBS to Message Systems in Maryland.

IBBS is not registered to do business in Maryland; it does not sell its products in Maryland or send its sales representatives or marketing agents to Maryland; and it does not maintain any agents in Maryland. (Fielder Decl. ¶¶ 15-20.) IBBS does not maintain any offices or places of business, or any other interest in any property in Maryland. (*Id*. at ¶ 26.) Further, no representative of IBBS has ever negotiated or signed a contract in Maryland. (*Id*. at ¶¶ 23-25.)

IBBS customers are broadband providers that provide web and email services to businesses and individuals that do not reside in larger markets. (Schlossnagle Aff. ¶¶ 13-15.) Many of these broadband provider customers do not have the infrastructure to provide their own end user customers with web and email services, so IBBS essentially serves as an outsourcing company, providing a call center and technical support to the end users. (*Id*. at ¶¶ 15-16 & Ex. C.) This call center is located in Georgia. (Fielder Reply Decl. ¶ 4.) Furthermore, when end users receive an email, their emails are first routed through IBBS's servers which are also located in Georgia. (Schlossnagle Aff. ¶ 17.)

Message Systems argues that several IBBS broadband provider customers have end users located in Maryland and, therefore, there are thousands of end users assisted by IBBS who reside in Maryland. According to Message Systems, these broadband provider customers include Broadstripe, Great Lakes Data Systems, Inc. ("GLDS"), Metrocast, and Millennium Digital

Media.[3] Message Systems also contends that IBBS's broadband provider customers are in fact partners and agents of IBBS. The basis for this assertion is that IBBS's website has a page dedicated to its "partners", which includes an open invitation for broadband companies that are "interested in working with IBBS, [to] please contact us to explore a potential partnership." (*Id*. at Ex. D.) Furthermore, a testimonial from one IBBS customer, OneLink Communications, describes IBBS as a "true partner" because "they are as devoted to our customer's experience as we are and they prove it by being there for us 24x7." (*Id*. at Ex. B.)

According to the declaration of William Fielder, Chief Financial Officer of IBBS, Broadstripe, GLDS and Metrocast are not authorized agents of IBBS. (Fielder Reply Decl. ¶¶ 6, 8 & 10.) Moreover, Mr. Fielder stated that IBBS customer Metrocast does not have any email subscribers, and all of the work IBBS does for Metrocast is done in Atlanta, Georgia. (*Id*. at ¶ 7.) GLDS does not have any email subscribers either, according to Mr. Fielder, as it is a billing vendor to IBBS customers and not an IBBS customer itself. (*Id*. at ¶ 9.) IBBS has not denied, however, that Broadstripe has email subscribers located in Maryland.

Message Systems filed the present suit alleging that IBBS breached the Agreement by not paying all the license fees it owed, and by terminating the Agreement without the requisite contractual notice. In its amended complaint, Message Systems further alleges that IBBS infringed on its copyright by unlawfully reproducing and distributing the Software in excess of the Agreement. In addition to its breach of contract and copyright infringement claims, Message Systems seeks a declaratory judgment that, among other things, the Agreement is not void and Message Systems is not in material breach of the Agreement.

---

[3]  In June 2008, Millennium Digital Media changed its name to Broadstripe, and they are now one entity under the name Broadstripe. (Fielder Reply Decl. ¶ 5.) Broadstripe is located in Missouri. (*Id*.)

## ANALYSIS

IBBS has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden on a 12(b)(2) motion to prove, by a preponderance of the evidence, grounds for jurisdiction. *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Cntrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). If, as in this case, the district court does not hold an evidentiary hearing, then the plaintiff must only make a *prima facie* showing of personal jurisdiction. *Id*. In making its jurisdictional determination, the court shall draw all reasonable inferences in favor of the plaintiff. *Id*.

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See id*. (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997)). Therefore, two conditions must be satisfied for a court to exercise personal jurisdiction over a nonresident defendant: "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id*. Because Maryland courts consistently have held that the State's long-arm statute permits the assertion of personal jurisdiction to the full extent allowed by the Due Process Clause, *see Androutsos v. Fairfax Hosp.*, 594 A.2d 574, 576 (Md. 1991), the two inquiries merge into one. *Carefirst*, 334 F.3d at 396-97 (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996)). But a plaintiff must first identify a specific statutory provision authorizing jurisdiction. *See Johansson Corp. v. Bowness Construction Co.*, 304 F. Supp.2d 701, 704 (D. Md. 2004); *see also Joseph M. Coleman & Assoc., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 118-19 n. 2 (D. Md. 1995).

Due process requires that a defendant have "minimum contacts" with the forum state,

such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two different approaches to determining the extent of the state's jurisdictional power: specific and general jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). In cases where the defendant's contacts with the state are themselves the basis for the lawsuit, those contacts may establish specific jurisdiction. *Id*. at 712. By contrast, if the contacts are not also the basis for the lawsuit, then the defendant's continuous and systematic, but unrelated contacts with the state may establish general personal jurisdiction. *Id*. Message Systems does not argue that IBBS is subject to general personal jurisdiction in Maryland. (*See* Pl.'s Opp'n at 10.) Accordingly, the court need only address whether IBBS is subject to specific jurisdiction.

Message Systems relies on three provisions of the Maryland long-arm statute to assert personal jurisdiction over IBBS: Md. Code, Cts. & Jud. Proc. §§ 6-103(b)(1), (b)(2), and (b)(4). Only one provision need be satisfied in order for the court to exercise jurisdiction. *See Bahn v. Chicago Motor Club Ins. Co.*, 634 A.2d 63, 67 (Md. App. 1993). Subsection 6-103(b)(1) authorizes personal jurisdiction over a person who, directly or by an agent: "[t]ransacts any business or performs any character of work or services in the State". A defendant need not be present in Maryland under this provision, but the defendant's actions must "culminate in purposeful activity within the State." *Bahn*, 634 A.2d at 67 (internal quotation marks and citation omitted). Furthermore, it is well-settled that this provision of the long-arm statute provides jurisdiction to the full extent permitted by due process. *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692 (D. Md. 2002). Because, as will be explained below, the court finds that IBBS's contacts with Maryland satisfy § 6-103(b)(1) and due process, it will not address the

other provisions relied upon by Message Systems here.

To determine whether the exercise of specific jurisdiction comports with due process, a court considers: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable". *ALS Scan*, 293 F.3d at 712 (internal citation omitted). Although an out-of-state party's contract in the forum state will not automatically establish jurisdiction, the surrounding facts, negotiations, contract terms, location of payment and the parties' course of dealing may do so. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985). The ultimate question is whether the contract had a "substantial connection" to the forum state. *Id*. at 479. Even a single contact may be sufficient to create jurisdiction so long as the "principle of fair play and substantial justice is not thereby offended." *Carefirst*, 334 F.3d at 397 (internal quotation marks and citation omitted). Accordingly, the court should direct its attention to the "quality and nature" of the defendant's contacts with the forum, rather than merely their quantity. *Id*.

When determining whether a defendant has purposefully availed itself of the privilege of doing business in the forum state, courts consider a variety of nonexclusive factors, such as: (1) whether the defendant maintains offices or owns property in the forum state; (2) whether the defendant reached into the forum state to solicit or initiate business; (3) whether the defendant deliberately engaged in significant business activities in the forum state; (4) whether the parties contractually agreed that the law of the forum state would govern disputes; (5) whether the defendant made in-person contact with a resident of the forum state regarding the business relationship; (6) the nature, quality and extent of the parties' communications about the business

being transacted; and (7) whether the performance of the contract was to occur within the forum. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citations omitted). The "strongest factor" in determining whether business negotiations give rise to specific jurisdiction is "whether the defendant initiated the business relationship in some way." *Giannaris*, 219 F. Supp. 2d at 692 (internal quotation marks and citation omitted).

If the defendant's activities in the forum state form the basis for the lawsuit, then the court must determine whether the exercise of personal jurisdiction would be constitutionally reasonable. The ultimate question is whether litigation in the forum state is "so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009) (internal quotation marks and citation omitted). In its determination the court should consider such additional factors as: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interest of the states in furthering substantive social policies." *Consulting Engineers*, 561 F.3d at 279 (citing *Burger King*, 471 U.S. at 477).

Although IBBS does not have a physical presence in Maryland or conduct regular business activities here,[4] the record shows that IBBS initiated the business relationship with

---

[4] Message Systems argues that a legal partnership and/or principal/agent relationship exists between IBBS and its broadband customer providers, at least one of which, Broadstripe, appears to have end user customers in Maryland. (*See* Schlossnagle Aff. Ex. N.) Message Systems has not presented sufficient evidence, however, from which the court can reasonably infer that a partnership or principal/agent relationship exists between IBBS and Broadstripe. The only evidence Message Systems has presented of a partnership is use of the word "partner" in a general sense by IBBS and some of its customers on their websites. Nevertheless, the court finds that the legal relationship between IBBS and its broadband provider customers is not dispositive, given the other contacts IBBS has with the state of Maryland.

Message Systems on December 26, 2006 when Mr. Ingram sent an email via the Message Systems website to inquire about Message Systems' software products.[5] The specific page of the Message Systems website on which Mr. Ingram clicked to send an email indicated clearly that Message Systems is located in Columbia, Maryland. (*See* Schlossnagle Aff. Ex. K); *see also Costar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 766 (D. Md. 2009) (finding that "[a]lthough Defendant contends that she was not aware of the fact that she was directing her actions into Maryland, Plaintiffs' website lists Plaintiffs' address in Maryland.")

Other contacts supporting an assertion of jurisdiction over IBBS include the parties' decision that Maryland law would govern any disputes under the Agreement, IBBS's payment of licensing fees to Maryland, and IBBS's use of Maryland phone numbers to contact Message Systems. *See Burger King*, 471 U.S. at 479-81 (finding that even where physical ties to Florida were lacking, constitutional minimum contacts still existed because the defendant reached out to a Florida corporation, entered into a long-term franchise agreement that would be governed by Florida law, and under which payments would be made to Florida, and therefore should have known that he was negotiating with a Florida enterprise). The fact that Broadstripe, one of IBBS's broadband provider customers, serves end users in Maryland whose emails are routed through IBBS's servers in Georgia also weighs in favor of jurisdiction, although only slightly because such contact is relatively attenuated and does not involve the same degree of deliberate

---

[5]  IBBS's argument that Message Systems initiated contact because its website asks visitors to email for more information is unavailing. This is not a situation where Message Systems directly advertised to IBBS through the mail or in a trade magazine. In this case, Mr. Ingram sought out Message Systems through its website and expressed a specific interest in learning about Message Systems' software. Moreover, the next contact between the parties also appears to have been initiated by IBBS, when it called Mr. Svezia of Message Systems in December 2006. That Message Systems followed up on IBBS's inquiry does not negate the fact that IBBS first reached out to Message Systems.

9

conduct by IBBS.[6] *See ESAB Group*, 126 F.3d at 625 (to be subjected to specific personal jurisdiction "the defendant's actions must be directed at the forum state in more than a random, fortuitous, or attenuated way.").

Under these circumstances, it is evident that IBBS purposefully conducted business activity in Maryland and availed itself of the protections of Maryland law when it reached out to a Maryland company and executed a contract that was to be governed by the laws of Maryland. *See Burger King*, 471 U.S. at 482. It was foreseeable that any violation of the contract terms or infringement on Message Systems' copyright would cause injuries to Message Systems in Maryland, and therefore it would have been reasonable for IBBS to assume that it might be called into court in Maryland. *See id*. at 480 (holding that the defendant's refusal to make payments under a contract with a Florida corporation and wrongful use of the corporation's trademarks caused foreseeable injuries in Florida and it was "at the very least, presumptively reasonable for [the defendant] to be called to account [in Florida] for such injuries."). Although there are facts counseling against the exercise of jurisdiction in this case as well, namely that all in-person negotiations surrounding the Agreement occurred in Georgia and IBBS does not maintain offices or property in Maryland, nor conduct regular business activities here, IBBS's

---

[6] In *Kernius v. International Electronics, Inc.*, 433 F. Supp. 2d 621 (D. Md. 2006), a case relied upon by Message Systems, a judge in this District asserted personal jurisdiction over a defendant that sold an allegedly patent-infringing product to national chain stores such as Walmart, Best Buy, RadioShack and Target, because it was reasonable to infer that the product ultimately would be sold in Maryland, given that the defendant purposefully placed it in the national stream of commerce through nationwide retailers. Here, however, there is not the same degree of deliberate conduct on behalf of IBBS. There is no indication that IBBS specifically sought out broadband provider customers with nationwide or Maryland end users, and it seems that some of its customers do not have end users at all. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994) (stating that "[t]o permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties in our system of federalism. Such a rule would subject defendants to judgment in locations based on the activity of third persons and not the deliberate conduct of the defendant").

initiation of a business relationship with a Maryland company and the Agreement's choice of law provision strongly weigh in favor of the assertion of personal jurisdiction.[7]

Message Systems' claims arise out of those activities IBBS directed at Maryland because they are related to the contract between the parties, and therefore personal jurisdiction is appropriately exercised in this case so long as it is constitutionally reasonable. IBBS argues that personal jurisdiction would be unreasonable because it would be unfairly disadvantaged in defending a lawsuit in Maryland, and Maryland has minimal interest in adjudicating the dispute because the complained of activity did not occur here. But other than the fact that it does not have a corporate presence in Maryland, IBBS has not pointed to any grave difficulty it will face by litigating this dispute in Maryland, or any special circumstances that will put it at a severe disadvantage. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) (stating that "progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome"). The Fourth Circuit has stated that "the inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there." *CFA Inst.*, 551 F.3d at 296. Here, it was reasonably foreseeable that by entering into an ongoing licensing agreement governed by Maryland law with a Maryland-based company,

---

[7] The present matter is distinguishable from *Johansson*, a case relied upon by IBBS, where this court found it lacked personal jurisdiction over a North Carolina corporation that had contracted with a Maryland corporation. 304 F. Supp. 2d at 709. In *Johansson*, the defendant had never reached out beyond its home state, "sought to confine its business to North Carolina", *id*. at 705, and "was drawn into a one-time, short-term relationship with a Maryland corporation, on a North Carolina project being constructed for a North Carolina client, in a subcontract largely negotiated in North Carolina which provided that North Carolina law would govern any resulting legal disputes." *Id*. at 708-09. Further, the fact that the plaintiff's client had initiated the business relationship with the defendant counseled against the exercise of personal jurisdiction. *Id*. at 706. Here, by contrast, IBBS, which did not seek to limit its business to Georgia, initiated the business relationship with Message Systems. That relationship involved an ongoing license agreement, governed by Maryland law, for the use of software produced by a Maryland company. Thus, unlike in *Johansson*, the contract here has a substantial connection to Maryland.

IBBS might be haled into court in Maryland if it violated that agreement or infringed upon Message Systems' copyright. Furthermore, IBBS's lack of physical presence in Maryland does not, by itself, outweigh Message Systems' interest in having its case litigated here, or Maryland's interest in having the claims of its residents litigated efficiently. *See id*. at 297 (holding that "Virginia has a valid interest in the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of Virginia law."). Accordingly, exercise of personal jurisdiction over IBBS in this case is constitutionally reasonable and does not offend traditional notions of fair play and substantial justice.

## **CONCLUSION**

For the foregoing reasons, the court will deny the defendant's motion to dismiss for lack of personal jurisdiction. A separate Order follows.

|  |  |
|---|---|
| July 19, 2010 | /s/ |
| Date | Catherine C. Blake |
|  | United States District Judge |